***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. An employer-employee relationship existed between plaintiff James MacFarland and defendant American National Can Co. prior to and on 22 May 1997.
5. Defendant Gallagher Bassett is the administrator for the self-insured employer.
6. The parties agree that medical records or reports and itemized billing statements of Dr. David L. Kelly and Dr. Timothy W. McGowan may be submitted by any of the parties into evidence, only after the reports or records have been shared with the other counsel, and subject to the right of any of the parties to depose the health care providers.
7. Plaintiff's compensation rate is $512.00, which is equivalent to the maximum compensation rate for the year 1997, based on an average weekly wage of $847.27.
8. Plaintiff suffered an admittedly compensable injury on or about 22 May 1997. The parties entered into a Form 21 Agreement, which was approved by the Industrial Commission on or about 5 October 1998.
9. Defendant retained Genex Services, Inc. to provide vocational efforts to plaintiff in or about January 1998.
10. On or about 20 November 2000, Executive Secretary Tracey H. Weaver entered an order that plaintiff fully and completely cooperate with reasonable vocational services offered by defendant.
11. On or about 26 April 2001, former Special Deputy Commissioner Gina E. Cammarano entered an order approving defendant' motion to suspend payment of compensation until plaintiff demonstrated full compliance with vocational rehabilitation services.
12. On or about 13 August 2001, plaintiff moved the Industrial Commission to terminate the suspension of his benefits and reinstate his benefits on the basis that he was fully compliant with the vocational rehabilitation services being provided.
13. Defendant filed a response opposing the motion to reinstate benefits.
14. On or about 21 September 2001, Executive Secretary Tracey H. Weaver entered an order reinstating plaintiff's temporary total disability benefits effective 7 August 2001.
15. Defendant filed a Notice of Appeal from Order of Executive Secretary, dated 27 September 2001, as well as a Form 33, Request for Hearing on or about 27 September 2001.
16. On or about 5 November 2001, plaintiff's counsel filed a Motion to Compel Compliance with Order of Executive Secretary in Form 24 Proceeding.
17. On or about 5 December 2001, defendant filed a response to plaintiff's Motion to Compel Compliance with Order of Executive Secretary in Form 24 Proceeding.
18. On or about 20 December 2001, Deputy Commissioner John Schaffer entered an order denying plaintiff's Motion to Compel Compliance and stated that all issues would be addressed by a Deputy Commissioner at a hearing.
19. The parties stipulated into evidence, as Stipulated Exhibit 1, plaintiff's vocational rehabilitation records.
20. The parties stipulated into evidence, as Stipulated Exhibit 2, plaintiff's medical records.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. On or about 22 May 1997, plaintiff sustained a compensable back injury while pulling on a buggy. The parties entered into a Form 21 Agreement, and plaintiff began receiving temporary total disability benefits beginning 22 February 1998.
2. Defendant began offering plaintiff vocational rehabilitation services in April 2000, but plaintiff refused to meet with the vocational specialist. On 23 October 2000, defendant filed a motion to have the Industrial Commission order plaintiff to cooperate with vocational services.
3. On 20 November 2000, the Executive Secretary issued an order requiring plaintiff to fully and completely cooperate with all reasonable vocational services offered by defendant.
4. Defendant continued to offer vocational services to plaintiff. However, plaintiff continued to refuse to cooperate with vocational services and defendant filed a Form 24 Application to Terminate or Suspend Payment of Compensation on 14 March 2001.
5. The Form 24 hearing was held on 19 April 2001. During the Form 24 hearing, plaintiff told the Special Deputy Commissioner he would be foolish to look for employment because he would lose all of the employee benefits he was currently receiving if he went to work for another employer.
6. The Special Deputy Commissioner entered an Order on 26 April 2001, allowing defendant to suspend plaintiff's compensation benefits until he demonstrated full compliance with the vocational services being offered by defendant. Plaintiff did not appeal the Form 24 Order or file a Motion to Reconsider with the Special Deputy Commissioner.
7. On 13 August 2001, plaintiff filed a Motion to Reinstate Temporary Total Disability Benefits. Plaintiff contended he was fully compliant with vocational rehabilitation services. Defendant filed a response indicating that plaintiff was not cooperating with vocational services to the extent that compensation benefits shoulder be reinstated. Defendant also asserted that there were no provisions in either the Workers' Compensation Rules or the General Statutes to support plaintiff's request that the Executive Secretary reinstate benefits following a Form 24 suspension.
8. The Executive Secretary issued an Administrative Order on 21 September 2001, reinstating plaintiff's temporary total disability benefits. On 27 September 2001, a Notice of Appeal of the Administrative Order and a Form 33 Request for Hearing were filed by defendant.
9. On 13 November 2001, plaintiff filed a Motion to Compel Compliance with the Order of the Executive Secretary. Defendant filed a response on 5 December 2001, opposing the Motion. On 20 December 2001, Deputy Commissioner John Schaffer, acting Executive Secretary, entered an order denying plaintiff's Motion to Compel Compliance. Deputy Commissioner Schafer's Order stated that all issues involved in the case would be addressed by the Deputy Commissioner pursuant to defendant's appeal and Form 33 Request for Hearing.
10. Since 1997, plaintiff has been seen by five spine specialists. He has undergone lumbar x-rays, a myelogram, a CT scan and three MRIs.
11. Dr. Timothy W. McGowan of Salem Spine and Scoliosis treated plaintiff from December 1997 until April 1998. Dr. McGowan recommended conservative, non-operative treatment. In April 1998, Dr. McGowan noted plaintiff was at maximum medical improvement and entitled to a 10% rating to his back. Dr. McGowan advised plaintiff he could return to his job as a mechanic with defendant-employer with the permanent restriction of no lifting more than 25 pounds.
12. Plaintiff obtained a second opinion from Dr. William R. Brown of Carolina Neurosurgical Associates. Dr. Brown also recommended conservative non-operative treatment, which included epidural steroid injections and a back brace. Dr. Brown was of the opinion that plaintiff had a 10% permanent partial disability rating to his back.
13. Plaintiff was also treated by Dr. David L. Kelly of the Department of Neurosurgery with the Wake Forest University Baptist Medical Center. Dr. Kelly treated plaintiff from September 1998 through 21 May 2000. Dr. Kelly noted plaintiff had degenerative disc disease and was not a surgical candidate. Dr. Kelly was of the opinion that plaintiff was entitled to a 5% rating to his back and authorized plaintiff to return to work with restrictions of not bending his back while lifting and not lifting more than 30 pounds.
14. On 10 May 2001, plaintiff agreed to meet with vocational specialist Marion McKenna. The first meeting was on 24 May 2001, at 11:00 a.m. Ms. McKenna noted that plaintiff was drinking a beer when she arrived; however, plaintiff stated that the beer was left over from the night before and had not been consumed that morning. Ms. McKenna noted that plaintiff exhibited symptoms of pain, including difficulty climbing steps in his home and walking with "a noticeable gait disturbance." Ms. McKenna further stated that the meeting took place at plaintiff's home because "he has trouble driving his manual transmission, and the friend he relies upon to transport him does not get out of work until after 2:30 p.m." Ms. McKenna questioned plaintiff about his desire and ability to return to work. Plaintiff responded that he was unable to work in any capacity and advised her that he was in too much pain to work.
15. Ms. McKenna provided plaintiff with a copy of the Summary of Industrial Commission Guidelines for Workers' Compensation, and explained to plaintiff his role in the rehabilitation process. Plaintiff was also provided with a job seeking skills manual and handouts regarding the organization of a job search. Plaintiff was also given the Self Directed Search (SDS) and asked to complete it prior to the next meeting, scheduled on 1 June 2001 at the ESC offices in Winston-Salem.
16. The next meeting between plaintiff and Ms. McKenna was held on 8 June 2001. Ms. McKenna reported that plaintiff was timely, properly attired and had driven himself to the meeting. Plaintiff had completed the SDS, which was scored and reviewed to determine plaintiff's aptitudes for specific forms of employment. Ms. McKenna located three possible positions for plaintiff, but upon investigation one was filled, one was beyond plaintiff's restrictions, and the third required a resume which plaintiff agreed to prepare and submit. Plaintiff also reported that he was reviewing the newspaper for job opportunities.
17. Following this meeting, Ms. McKenna questioned the cost effectiveness of continuing plaintiff's vocational rehabilitation program. She listed factors in favor of plaintiff, including his education, solid work history and his access to transportation. She also listed factors negative to plaintiff's progress, including his stated inability to work due to pain, lack of vocational goals, lack of computer skills, his acceptance of a disabled lifestyle and his availability for third shift work only. Ms. McKenna also voiced concern that plaintiff has a possible substance abuse problem, but the Full Commission finds this allegation to be without foundation and beyond the scope of Ms. McKenna's expertise. Further, the Full Commission finds that the list of negatives provided by Ms. McKenna do not speak to plaintiff's efforts to comply with vocational rehabilitation, but are indicative only of a forecast as to possible barriers to the success of the program. Plaintiff was cooperating with Ms. McKenna, the vocational rehabilitation professional retained by defendant.
18. Plaintiff began working with a new vocational specialist, Ms. Tianna Herbin, on 25 June 2001. During their first meeting at plaintiff's home, Ms. Herbin discussed with plaintiff the prospect of his obtaining job training with Goodwill Industries. In response to plaintiff's concern that the physical requirements of the job training were outside of his restrictions, Ms. Herbin agreed to obtain information confirming the requirements. Plaintiff informed Ms. Herbin that he had contacted N.C. Vocational Rehabilitation for an appointment and was awaiting a return call to schedule the appointment. At Ms. Herbin's suggestion, plaintiff agreed to follow up on the contact.
19. Ms. Herbin met with plaintiff again on 10 July 2001, to discuss potential job openings. Ms. Herbin identified a number of maintenance positions as potential jobs. Plaintiff advised Ms. Herbin that these positions were beyond his physical capabilities. Plaintiff expressed interest in a position with Trotman's Picture Gallery as a picture framer, but reiterated to Ms. Herbin that transportation to work could be a major barrier for him because driving in traffic with his manual transmission vehicle hurt his back. Plaintiff stated that he tried to drive only in the evenings when traffic was lighter. Ms. Herbin and plaintiff discussed the possibility of work-at-home positions.
20. Ms. Herbin met with plaintiff again on 18 July 2001, and provided him with a list of jobs for which he could apply. Plaintiff provided Ms. Herbin with a list of jobs he had obtained from his newspaper search, two of which he had supplied with a resume and a third that he was attempting to contact by telephone. Further, plaintiff informed Ms. Herbin that he had purchased a computer to assist in his job search and was taking lessons in its use from the local Gateway store. Ms. Herbin noted that plaintiff's computer training would enhance plaintiff's job opportunities and expand his vocational potential, in addition to increasing his actively seeking job leads.
21. On 7 August 2001, plaintiff met with Ms. Herbin at the offices of plaintiff's counsel. The meeting was set at that location to give plaintiff's counsel an opportunity to "gain knowledge of the vocational issues and strategies" and to allow him to "advise his client at that time of how to comply fully with the vocational process." At the meeting, plaintiff provided Ms. Herbin with job contact log forms listing various places to which he had applied for employment. In addition, job opportunities discovered by Ms. Herbin were discussed. Ms. Herbin noted that plaintiff had still failed to contact North Carolina Vocational Rehabilitation, and that plaintiff claimed to forget to call when other situations occurred.
22. Following a meeting on 21 August 2001, Ms. Herbin noted that "the client can successfully return to work if he continues to actively be a part of the vocational process."
23. In October 2001, plaintiff met with Ms. Herbin and requested that vocational rehabilitation be discontinued until he could schedule an appointment with his treating physician regarding an increase in his pain symptoms, which plaintiff attributed to the increase in activity necessitated by the search for employment. An appointment with plaintiff's treating physician was scheduled, and Ms. Herbin was instructed to place plaintiff's file on hold pending the examination.
24. Plaintiff presented to Dr. Kelly on 6 December 2001. Plaintiff claimed his recent job search activities had caused an increase in his back discomfort and was complaining of pain in his sacram or tailbone area. Dr. Kelly recommended and obtained another MRI to properly assess plaintiff's current condition. The MRI revealed that there were no abnormalities identified within the sacrum and that plaintiff's back condition looked better than it did in September 1999. Dr. Kelly noted there was no need for additional testing or treatment. Dr. Kelly did not change plaintiff's work restrictions, permanent partial disability rating, or limit plaintiff's physical activities in any manner.
25. Plaintiff did not meet with Ms. Herbin between October 2001 and the hearing before the Deputy Commissioner on 11 March 2002. Ms. Herbin provided plaintiff with five job leads by mail, and plaintiff followed up on all five leads. In addition, plaintiff provided evidence that he had sought employment with 18 other potential employers on his own.
25. At no time has Ms. Herbin reported that plaintiff is failing to cooperate with vocational rehabilitation. The fact that plaintiff has been unable to find employment is due to factors beyond his control and do not indicate a lack of cooperation sufficient to warrant the continued suspension of plaintiff's benefits.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. "The refusal of the employee to accept any medical, hospital, surgical or other treatment or rehabilitative procedure when ordered by the Industrial Commission shall bar said employee from further compensation until such refusal ceases." N.C. Gen. Stat. § 97-25.
2. The greater weight of the evidence shows that plaintiff has been fully cooperative with vocational rehabilitation efforts since his initial meeting with Ms. McKenna on 24 May 2001. That plaintiff has been unsuccessful in his attempts to obtain employment is not indicative of a lack of cooperation on plaintiff's part with vocational rehabilitation efforts. Accordingly, plaintiff's benefits should be resumed as of that date. N.C. Gen. Stat. § 97-25.
3. Plaintiff is entitled to have defendant provide all medical treatment arising from the 22 May 1997 compensable injury to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
4. Plaintiff is not entitled to attorney fees or costs, and defendant are not subject to a 10% penalty or sanctions.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant are required to resume temporary total disability benefits beginning on 24 May 2001 and continuing until further Order of the Commission. Those benefits which have accrued shall be paid in a lump sum, subject to attorney's fees approved below.
2. Defendant shall pay for all medical treatment incurred in the past or to be incurred in the future which is related to plaintiff's compensable injury when bills are submitted according to Industrial Commission procedure.
3. A reasonable attorney's fee of 25% of the compensation awarded in Paragraph 1 of this Award his hereby approved for plaintiff's counsel. One fourth of the lump sum payment of benefits shall be paid directly to plaintiff's counsel. Thereafter, every fourth check shall be paid directly to plaintiff's counsel.
4. Defendant shall pay the costs.
This the ___ day of May, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER